# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL KUHL, individually and on behalf of all similarly situated persons, ) ) ) ) | |
| Plaintiff ) ) | No. 07 C 0214 |
| v. ) ) | Hon. Joan B. Gottschall |
| GUITAR CENTER STORES, INC. and GUITAR CENTER, INC., ) ) ) | Mag. Judge Michael T. Mason |
| Defendants ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs' motion to suspend defendants' pursuit of discovery or, in the alternative, to restrict defendants' communications with putative class members [58]. Plaintiffs initially filed the motion on an emergency basis. However, in order to allow the parties time to fully brief the issue, defendants voluntarily suspended the employee interviews that form the basis of plaintiffs' request for emergency relief pending a ruling by this Court [60]. For the reasons stated below, plaintiffs' motion is granted in part and denied in part and defendants are granted leave to continue interviewing the employees subject to the conditions set forth below.

**Background**

Plaintiffs filed the underlying case on January 11, 2007, alleging that defendants unfairly and unlawfully deducted amounts from their employees' wages for meal breaks. Along with the initial complaint, plaintiffs filed a motion for class certification without a supporting brief. On August 29, 2007, the district court denied plaintiffs' motion for class certification without prejudice. On December 12, 2008, plaintiffs filed an amended motion for class certification, and

requested that the district court enter and continue the motion generally.

In the present motion to suspend discovery, plaintiffs allege that defendants own 198 stores, each of which employs between 40 and 60 employees. Accordingly, defendants employ more than 9,900 people (collectively the "Guitar Center Employees"). The Guitar Center Employees are putative class members. On October 27, 2008, plaintiffs' counsel learned "from plaintiffs and clients" that defense counsel had begun interviewing the Guitar Center Employees. Plaintiffs allege that the interviews are improper *ex parte* communications and ask this Court to prohibit defendants from interviewing the employees.

Defendants claim that the purpose of the interviews is to investigate the facts alleged in plaintiffs' complaint in preparation for mediation. It is undisputed that a primary issue in this case is whether the Guitar Center Employees took breaks or worked during breaks. Defendants allege that the facts related to this issue cannot be discerned from time or payroll records, but only through anecdotal information received from the employees. Defendants further claim that the information is needed to evaluate the potential settlement value of this case.

Based on the present record, this Court cannot determine how many Guitar Center Employees defendants' counsel spoke with before voluntarily suspending the interviews on October 29, 2008. The affidavits from the attorneys who conducted the interviews (the "Attorney Affidavits"), attached as an exhibit to defendants' response, aver that the interviews took place on October 27 and/or 28, 2008. Defendants rely on the Attorney Affidavits to show that the interviews took place on a voluntary basis, and only outside counsel and the employee were present during each interview.

The Attorney Affidavits state that before beginning an interview, the attorneys read a

statement titled "Who We Are and the Purpose of the Interview" (the "Statement").  The Statement informs Guitar Center Employees that the attorney conducting the interview represents the defendants in a lawsuit filed by three former employees that is "framed as a potential class action."  It states that the attorney is conducting the interview in order to gather information regarding "the meal break habits of hourly employees."  As set forth in the Statement, the attorney asks each employee if they are "currently represented by an attorney in this litigation?  If so, [the attorney] will end the interview at this time. . . . If not, [he/she] will proceed."

The Statement then informs Guitar Center Employees that the "purpose of the interview is to gather as much information as possible to help Guitar Center evaluate and defend this case" and the information provided "may be used in connection with this litigation, but [the] responses will not be used for performance evaluation purposes."  The Statement also informs employees that the attorney "may prepare a written statement, called a 'declaration' . . . [and] ask [the employee] to sign the declaration."  Finally, the Statement informs the Guitar Center Employees of a potential conflict of interest:

> Before we proceed, we want to make sure that you understand that we represent Guitar Center, Inc., who is the defendant in this lawsuit and we do not represent you individually.  You are a potential member of this class, and [as] such, your interests could be adverse to Guitar Center's interests.  You have the right to retain your own attorney before deciding whether to continue.
>
> We also want to make sure you understand that your participation in this interview is completely voluntary.  There is no benefit to you for participating and no action will be taken against you if you decline to participate.

The Attorney Affidavits state that the attorneys read the entire Statement aloud to each Guitar Center Employee before proceeding with any interview.

**The Stipulation and Order Staying Discovery**

Plaintiffs allege that defendants violated the terms of a Stipulation and Order (the "Stipulation") entered by the district court on August 11, 2008, nineteen months after plaintiffs filed their initial complaint. The Stipulation suspends the running of "any applicable statute of limitation . . . to allow the parties to discuss a potential resolution of Plaintiffs' claims." The Stipulation further provides that during the tolling period "all formal discovery shall be suspended; provided, however, that the parties agree to exchange information in good faith for the limited purpose of facilitating settlement." Formal discovery is a means of exchanging information between opposing parties in litigation and includes interrogatories, requests to produce, requests for admission and depositions. *See* Fed. R. Civ. P. 26-37. In their reply, plaintiffs acknowledge that formal discovery as stated in the Stipulation "merely refers to the outstanding numerous sets of Plaintiffs' 'formal' interrogatories and requests for documents and data that Defendants have not answered." Nevertheless, plaintiffs claim defendants breached the parties' agreement to stay this case pending mediation by conducting a "secret" and "massive, nationwide discovery campaign."

Here, defendants are not seeking to discover information from an opposing party, but rather from their own employees, who are, at this point in the litigation, essentially unrepresented fact witnesses. While the Guitar Center Employees are putative class members, plaintiffs have not provided any basis for this Court to conclude that defendants' contacts with them constitute "formal discovery" such that it is barred under the Stipulation. For this same reason, we reject plaintiffs' characterization of the interviews as a "discovery campaign."

**Plaintiffs' Request to Suspend the Interviews**

Plaintiffs argue that the interviews amount to impermissible discovery upon absent class members. In support, plaintiffs cite a number of cases from other jurisdictions that involve discovery in certified class actions. *See, e.g. Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 630-31 (M.D. Ga. 1999) (denying request for discovery upon individual class members); *Morgan v. UPS of Am.*, 1998 U.S. Dist. LEXIS 20197 (E.D. Mo. Oct. 16, 1998) (prohibiting defendants from deposing absent class members from four certified classes of present and former employees); *Redmond v. Moody's Investor Serv.*, 1995 U.S. Dist. LEXIS 6277 (S.D.N.Y. May 10, 1995) (limiting discovery of absent class members to interrogatories and depositions on issues of class-wide significance). Unlike the class members in plaintiffs' cases, the Guitar Center Employees are not absent members of a certified class, but rather individuals whom plaintiffs allege are similarly situated. *See Harkins v. Riverboat Servs., Inc*. 385 F.3d 1099, 1101 (7th Cir. 2004). Accordingly, the cases cited in plaintiffs' reply do not guide this Court's analysis. Plaintiffs' request to suspend the interviews on the grounds that they are impermissible discovery upon absent class members is denied. *See id.*

Next, plaintiffs ask this Court to find that the interviews are impermissible *ex parte* communications. Defendants are well aware of the prohibition against communicating with any Guitar Center Employee represented by counsel. Plaintiffs do not allege that defendants' counsel has interviewed or attempted to interview the plaintiffs or any Guitar Center Employee represented by plaintiffs' counsel. Rather, plaintiffs characterize all communications between defendants' counsel and the Guitar Center Employees as *ex parte*. That is simply not the case. *See Pruitt v. City of Chicago*, 2004 U.S. Dist. Lexis 9103 (N.D. Ill. May 19, 2004). Nevertheless, this Court must determine if there is any basis to restrict defendants' contacts with

5

the majority of Guitar Center Employees who are not represented by plaintiffs' counsel, or any other attorney in connection with the underlying lawsuit.

The Supreme Court has held that Fed. R. Civ. P. 23(d) allows a court, in appropriate circumstances, to limit communications between a party and putative class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 2220 (1981); *see, also Wiginton v. CB Richard Ellis*, 2003 U.S. Dist. LEXIS 16266, *4-5 (N.D. Ill. Sept. 15, 2003). "While a court has limited power to restrict communications between defendants and putative class members before the class is even certified . . . such control is designed to prevent abuse of the class action process such as . . . misleading communications and communications which affect a putative class member's decision to participate in the class action." *Pruitt,* 2004 U.S. Dist. LEXIS 9103 at *6 *(quotations omitted)*. Generally, courts limit communications between parties and potential class members only where "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101, 101 S.Ct. at 2200; *see, also Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 759 (7th Cir. 2000). Therefore, we must determine if there is any evidence that defendants abused the class action process or made any misleading communications to the Guitar Center Employees.

Plaintiffs claim that the interviews are inherently misleading because the Statement provides "only for the possibility of adverse interest" between defendants and the Guitar Center Employees, rather than the actual conflict as alleged in the complaint. This Court finds that the clause in the Statement informing each Guitar Center Employees that "[y]ou are a potential member of this class, and [as] such, your interests could be adverse to Guitar Center's interests"

6

and other related provisions adequately notify putative class members of the potential conflict. Plaintiffs also challenge the Statement on the grounds that it confuses Guitar Center Employees by referring to the class "without disclosing or defining what the classes are." While plaintiffs' amended motion for class certification is currently pending, the district court has not certified a class in this case. In the absence of any certification, this Court will not order defendants to define the class.

Plaintiffs characterize the interviews as an abuse of the class action process designed to discourage the Guitar Center Employees from participating in the class action. *See, e.g. Wiginton*, 2003 U.S. Dist. LEXIS 16266 at *5 ("Communications that undermine the purpose of Rule 23 include misleading communications and communications which affect a putative class members' decision to participate in the class action")(*quotations omitted*). Aside from the interviews themselves, plaintiffs do not cite any specific action by defendants or their counsel to discourage participation in the proposed class action. Rather, plaintiffs rely on the "inherently coercive relationship between employer and employee." In support, plaintiffs cite a law review article generally discussing employment relationships and the Seventh Circuit's holding in *EEOC v. Mitsubishi Motor Mfg. of Am.*, 102 F.3d 869 (7th Cir. 1996). Plaintiffs rely on *Mitsubishi* to support the proposition that "communications with putative class members, especially in employment cases, can have effects hard to undo at the end of the case, and that curative orders are appropriate."

Plaintiffs' reliance on *Mitsubishi* is misplaced. In *Mitsubishi*, a "pattern-or-practice" suit, the Equal Employment Opportunity Commission appealed an order requiring a corrective communication after the commission sent a potentially misleading letter to the defendant's

7

employees. 102 F.3d at 870. The Seventh Circuit found that the order to send a corrective letter was merely a managerial order, and therefore not appealable, and dismissed the appeal for want of jurisdiction. *Id.* at 871. The court observed that the district court's determinations regarding the use of information received through communications with putative class members "is no different from a limitation on discovery, not appealable because any error can be corrected at the end of the case." *Id.* Further, the court noted that while misleading information "in a class notice can have effects hard to undue at the end of the case . . . [it] would justify an appeal only if courts of appeals were willing to micro-manage the conduct of all complex cases." *Id.* at 872. Accordingly, while *Mitsubishi* supports this Court's authority to limit communications with putative class members where appropriate, it does not establish that a corrective order is appropriate in this case. *See id.*

Plaintiffs also submit the declarations of two Guitar Center Employees (the "Declarations"). Both employees declare that they and other employees "were required to go to the interview" and were "given the option not to participate . . . only after we were summoned, while on the job, to the appropriate office to participate in the interview." One of the Declarations states that on the day of the interviews "in a Guitar Center posting where monthly target sales were normally posted . . . there was posted a message prominently stating that I and another employee were scheduled to participate in the interview at the approximate time and date." The Declarations do not state that defendants' counsel cautioned the employees against participating in the underlying lawsuit or suggested that this case could adversely impact their employment. Despite this, plaintiffs ask this Court to infer that defendants have taken advantage of their position as an employer and forced the Guitar Center Employees to submit to interviews

8

which defendants deem to "be a more important job duty than meeting sales goals."

After reviewing the Statement, Attorney Affidavits and Declarations, we find plaintiffs have not established that the communications are designed to discourage or do in fact discourage Guitar Center Employees from participating in the lawsuit. *See Dominguez v. Don Pedro Rest.*, 2007 U.S. Dist. LEXIS 40787, *6 (N.D. Ill. June 1, 2007) (rejecting similar allegations in FLSA action where the court found no evidence that defendant employer misrepresented facts and "nothing in the record to suggest that defendants have gone beyond gathering facts to support their defense"); *Wiginton*, 2003 U.S. Dist. LEXIS 16266 at *8 ("Without a showing of actual harm, there must be some other evidence that justifies interfering with the defendant's communications") (*quotations omitted*). Rather, it appears that the interviews are part of defendants' internal investigation into the validity of the allegations in plaintiffs' complaint and related exposure in this case. Fact gathering of this kind is permissible. *See Wiginton,* 2003 U.S. Dist. LEXIS 16266 at *6-7 (rejecting argument based on inherently coercive employer-employee relationship where plaintiff was unable to establish a specific record showing that defendant intended to prohibit the class members from participating in the lawsuit).

Next, plaintiffs contend that the Statement is defective because it fails to "clearly and conspicuously" disclose or "does not make the. . . [following] disclosures at all":

> (1) that the employee's participation without counsel could jeopardize the employee's rights and recovery; (2) that the employee has a right to be represented by counsel; and (3) that the employee has the right to decline participation in the 'interview' process with no adverse consequences to his or her employment.

Plaintiffs' claim is not correct. As discussed above, the Statement notifies the Guitar Center Employees that their interest could be adverse to defendants, and that the employees have the right to retain counsel. There is no evidence that defendants have attempted to prevent any

Guitar Center Employee from consulting with counsel. Moreover, an employee's rights and recovery are impacted only if the interview elicits facts which show that the individual employee received compensation for all time worked. *See Dominguez*, 2007 U.S. Dist. LEXIS 40787, *9 (finding that the prohibition against forcing an employee to waive his rights "does not prohibit that defendant from gathering evidence in the effort to prove that there was no violation in the first place.") Finally, the Statement notifies employees that their participation is voluntary, and declining to participate will not result in any adverse action. The employee's right to decline to participate is further demonstrated by statements in the Attorney Affidavits that if any employee declined to participate in the interview, the interviewer would immediately conclude the interview. In fact, attorney Lillian Chaves Moon, who interviewed employees in Florida, avers that "two employees told [her] that they were currently represented by an attorney in this litigation [and she] immediately ceased the interview and thanked those employees for their time."

**Plaintiffs' Request to Participate in the Interviews and Compel Production of Documents**

In the event this Court decides, as we have, that the interviews are appropriate, plaintiffs request that their counsel be present during all future interviews of Guitar Center Employees. Plaintiffs claim that their counsel's participation would "alleviate the inherently coercive relationship between employer and employee and ensure that the process is fair to all parties." Although we recognize that the interests of judicial economy may be better served by joint interviews, this Court will not order defendants to allow plaintiffs' counsel to participate in the interviews. However, nothing precludes plaintiffs' counsel from contacting the Guitar Center Employees to schedule comparable fact-finding interviews. In their reply, plaintiffs state that it

is impossible to conduct their own interviews because defendants have refused to provide contact information for the putative class members as requested. The parties agreed to "exchange information in good faith for the limited purpose of facilitating settlement." Accordingly, and to the extent they have not already done so, defendants are ordered to provide plaintiffs with a list of the Guitar Center Employees identified by store and, where known, the employees' home address within twenty-one days of the date of this Order.

Plaintiffs seek to compel defendants to produce copies of the signed Statements, all recordings of the interviews, any notes taken by defendants' counsel during the interviews, and all other documents pertaining to defendants' communications with the Guitar Center Employees. Defendants contend that these materials are privileged and should not be produced. Because they do not contain any legal advice, litigation strategy, or confidential communications, this Court cannot determine how the signed Statements could be protected by the work product doctrine or any related privilege. Accordingly, defendants are ordered to produce copies of the signed Statements within twenty-one days of the date of this order and produce copies of all signed Statements from future interviews within fourteen days of the date of the interview. Plaintiffs' remaining requests to compel production are denied without prejudice. Nothing in this Order is intended to preclude plaintiffs from requesting information that is otherwise discoverable if the discovery stay is lifted.

Finally, plaintiffs' request that this Court order the parties to prepare a neutral and confidential questionnaire for each Guitar Center Employee is denied. While this Court encourages the parties to collaborate on a joint questionnaire, we will not dictate their fact-finding strategy.

**Conclusion**

For the reasons stated above, plaintiffs' motion is granted to the extent it seeks an order compelling defendants to identify Guitar Center Employees and to produce copies of all signed Statements, and denied as to all other aspects. However, plaintiffs' request to compel production of any notes, recordings, declarations or other documents related to the interviews is denied without prejudice.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: December 16, 2008**