IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL KUHL, ERIC DISRUD, and KEVIN CHERELLO, individually and on behalf of all similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 07 CV 214 |
| v. | ) ) | Judge Gottschall |
| GUITAR CENTER STORES, INC., and GUITAR CENTER, INC., | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Michael Kuhl, Eric Disrud and Kevin Cherello ("Plaintiffs"), individually and on behalf of two classes of similarly-situated persons, request that the Court enter an order finally approving the Settlement Agreement (the "Settlement" or the "Agreement") between Plaintiffs and Defendants Guitar Center Stores, Inc. and Guitar Center, Inc. ("Defendants" or "Guitar Center" or "GC"), and finally approving the form of Class Notice and its method of dissemination to the Settlement Class (comprised of a Rule 23 class and an FLSA class). The parties' proposed Order is attached hereto as <u>Exhibit A</u> and will be submitted to the Court in electronic format.

The approved notice was mailed to the class members, as the Court ordered. No class member has objected to the settlement.

I.  <u>Preliminary approval and dissemination of notice.</u>

On July 21, 2010, the Court held a hearing to consider Plaintiffs' Motion for

Preliminary Approval of Class Action Settlement and Notice. After consideration of the Settlement Agreement and plan of notice, the Court entered an order of preliminary approval. (Doc. 133). In accordance with the July 21 Order, the parties caused Rust Consulting, the Claims Administrator, to distribute the Notice to Class members by first class mail. Exhibit B, Declaration of Stacy Roe Re: Due Diligence and Proof of Mailing of the Notice.

The Notice was mailed to 14,512 people. The Notice informed Class members that "opt-out" requests were due on September 27, 2010 and that any objection to the Settlement was due on September 27, 2010. Only eight-seven of the Class members (one-half of one percent of the total) submitted valid opt-out forms; no Class member objected to the Settlement.

## II.    Background and summary of settlement.

 Plaintiffs' complaint alleges that Defendants made improper deductions from Plaintiffs' and Class members' wages, in violation of Defendants' contract with Plaintiffs and the Class, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), state wage payment and collection acts, including the Illinois Wage Payment and Collection Act, 820 ILCS §115/3 ("IWPCA"), and state law overtime acts, including the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL") and that Defendants were unjustly enriched. Defendants denied these allegations.

Through mediation, Plaintiffs and Defendants reached an agreement to settle this controversy on a class-wide basis. Plaintiffs' attorneys believe the settlement is fair, reasonable, and adequate for the class members. The class members have reacted very favorably to the settlement, as 13.5% have filed claims already, only

2

1/2 of 1% have opted out, and none has objected. The due date for claims is December 11, 2010, but the due dates for opting out or objecting expired several weeks ago.

The key terms of the Settlement are as follows:

(a)   Class certification.   The parties stipulated to certification of two classes for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Both classes are comprised of current and former nonexempt Guitar Center employees who have worked in either sales or operations. One class covers FLSA claims; the other covers state law claims.   The FLSA class consists of all qualifying employees (outside of California) who work or have worked at any of Guitar Center's retail stores in the United States at any time during the period beginning March 21, 2005 and ending May 10, 2006. The Rule 23 class (state law claims) consists of all qualifying employees who work or have worked in a Guitar Center retail store in any of the states listed on *Exhibit A* of the Agreement at any time between the start date listed on *Exhibit A* for the particular states through May 10, 2006.

(b)   Class Counsel and Class Representatives.   The Court appointed Plaintiffs as the Class Representatives, and appointed Bock & Hatch, LLC, Robin Potter & Associates, P.C., and Progressive Law Group, LLC as Class Counsel.

(c)   Monetary relief available to the class members.   Guitar Center created a settlement fund in the amount of $2,870,000.00. The Settlement

3

Fund will cover all payment obligations of Guitar Center under this settlement, including all of Plaintiffs' fees and expenses, and all Class member payments.  In addition to the Fund, Guitar Center is responsible for 50% of the mediator's fees and expenses and the cost of settlement administration.  The Settlement Fund is divided into two Sub Funds of $945,916.67 each: the "FLSA Sub-Fund" and the "State Law Sub-Fund." Each fund is to be distributed *pro rata* among all eligible Class members, in proportion to the duration of relevant times worked for Guitar Center by each Class member.

(d)     Class notice.  The parties have provided notice to the class members by first-class mail.  As evidenced by the Declaration of Due Diligence by Claims Administrator (Exhibit B), filed herewith, the Notice Plan approved by the Court has been successfully completed.

(e)     Incentive awards and attorneys' fees and costs.  Guitar Center has agreed to pay incentive awards to the named plaintiffs from the Settlement Fund.  Guitar Center agreed to pay lead plaintiff Michael Kuhl $12,500 for his efforts on behalf of the class and in exchange for a release of all claims he could have brought, and payments of $4,500 each to Eric Disrud and Kevin Cherello for their efforts on behalf of the other class members and in exchange for a release of all claims they could have brought against Guitar Center.  Furthermore, Guitar Center has agreed to pay Class Counsel $956,667 from the Settlement Fund (one-third) for their attorneys' fees and

litigation costs.

III.    **The Court should approve the settlement.**

    A.    **Standard for judicial evaluation and approval.**

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

    B.    **Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.**

The factors considered are:  (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby, supra*, 75 F. 3d at 1198-1199; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074, 1082 (7th Cir. 1997); *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (for factor (8)).  Here, these factors show that the settlement should be approved.

    1.    **Strength on the merits compared to the settlement amount.**

Generally, the most important factor in determining whether a settlement should be approved is the comparison of the terms of the Settlement with the likely results of the litigation. *Hiram Walker*, *supra*, 768 F.2d at 889; *see also Synfuel*, *supra*, 463 F.3d at 653 (citations omitted).

Plaintiffs alleged that Guitar Center made improper deductions from employees' time records for break time, in two ways. First, when employees did not punch "out" or "in" for unpaid meal breaks, Guitar Center deducted a full hour's wages from the employees' time cards, regardless of the amount used for the meal break. Second, when employees punched "out" and "in" for breaks of less than 30 minutes, Guitar Center rounded up the meal breaks to 30 minutes. Through the litigation process and diligent representation of the Class, Plaintiffs' counsel attempted to substantiate this alleged misconduct.

For its part, Guitar Center argued that Plaintiffs' claims should be dismissed and that Plaintiffs' class claims were impermissibly vague. Guitar Center also vigorously argued in the course of the litigation that deductions were appropriate because Guitar Center employees took meal breaks without "clocking out."

With regard to the FLSA class, approximately 8,955 store employees worked for the Company outside of California between March 21, 2005 and May 10, 2006. The total number of workweeks worked by these employees is 235,630. The Rule 23 class includes the Guitar Center employees who worked at stores in 27 states nationwide during time periods ranging from 1997 to 2006.

The Settlement Fund provides a meaningful cash payment to every class

member who submits a claim form, providing information sufficient to identify them and calculate their settlement payment.

### 2.    Defendants' ability to pay.

In the context of a classwide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison, Illinois*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997) (Castillo, J.).  Publicly-available records indicate that Guitar Center is one of the largest retailers of musical instruments in the United States.  Their ability to pay is not a factor.

### 3.    The likely costs, complexity, and length of further litigation.

Class actions have a well-deserved reputation for complexity.  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  This case is no exception.  Before mediation, Plaintiffs filed an amended motion for class certification. Litigation of the class certification issue would require a significant commitment of time and financial resources.  Guitar Center's position indicates that if litigation ensues, it will engage in an expensive and lengthy discovery campaign of putative Class members, including, for example, regarding meal break patterns.  In addition, in the absence of settlement a lengthy and expensive trial would be a virtual certainty.  Given the nature of the case, it is a most likely that all post-trial appellate rights would be exercised here.  The settlement avoids the uncertainty, length of time and high costs associated with continuing this hard-fought litigation, in which the parties have endured ongoing disputes in the course of exchanging extensive

informal discovery, extended information gathering, and dueling employee surveys. The Court should finally approve the settlement because the settlement will minimize the inevitable costs of future litigation of this matter.

### 4. Opposition.

A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). There is no opposition to this settlement. Just 87 class members opted-out after receiving the notice of class action settlement. These "opt outs" represent 1/2 of 1 percent of the 14,512 total members. The lack of opposition and minimal number of requests for exclusion show that the class members support the settlement.

### 5. Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). The settlement record proves that the settlement is not the product of collusion. Plaintiffs and Defendants reached this Agreement only after considering: (1) the benefits to the class; (2) the unfeasibility of individual judgments; (3) the evidence of liability in the case; and (4) the risks, costs, uncertainties, and delays of litigation.

The settlement is the culmination of extensive and hard-fought litigation. Plaintiffs' complaint went through three iterations, Guitar Center filed two motions

8

to dismiss, and the parties litigated several discovery-related motions. The settlement terms were agreed only after arduous arm's-length bargaining by experienced counsel and mediation with Hunter R. Hughes of Rogers & Hardin, LLP from Atlanta, Georgia. Mr. Hughes is an experienced employment lawyer and mediator. http://www.rh-law.com/Attorneys/HunterRHughesIII. He conducted a two-day mediation in February 2010. On February 5, 2010, Plaintiffs submitted an extensive Mediation Position Statement detailing their positions on issues of fact and law, summarizing efforts made in litigation and settlement, and outlining positions on issues relevant to potential settlement. At the conclusion of the settlement conference, Mr. Hughes prepared a "Mediator's Proposal" suggesting the terms of a potential settlement between the parties, attached to the Agreement as *Exhibit F*, and which the Agreement incorporates in full.

### 6. Opinion of counsel.

Class Counsel believe this settlement is fair, reasonable, and adequate. Class Counsel have litigated numerous class actions, including employment law actions. Exhibit C, Exhibit D, and Exhibit E (Class Counsel's firm resumes). Under these circumstances, Class Counsel's opinion should be given great weight because of Class Counsel's extensive experiences in dealing with the myriad and complex issues involved in this case and class actions generally.

### 7. Stage of proceedings and amount of discovery.

The stage of proceedings and amount of discovery supports final approval. The members of the class have been identified. The parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiffs and

their attorneys to evaluate the strength of this case. Plaintiffs have amended the complaint three times, and the parties have litigated hard-fought motions, including two motions to dismiss and formal and informal discovery practice, including a motion to compel production of class data and to prevent putative Class member communications. At the time the Agreement was reached, Plaintiffs were prepared to move for class certification.

### 8. Public interest.

The public interest is best served by ending this case now. Courts have held that a settlement of class action litigation serves the public interest. *Armstrong*, *supra*, 616 F.2d at 313.

## IV. The Court should finally approve the notice.

In compliance with the Court's July 21 preliminary approval order, the parties caused the approved class notice to be mailed to the class members. Rule 23(e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Here, the notice was sent by first-class mail to the Class members. Exhibit B. In order to protect the rights of absent Class members, the Court must provide the best notice practicable to Class members. *Phillips v. Petroleum Co. v. Shutts*,

472 U.S. 797, 811-812 (1985). Notice by first class mail is practical when the names and addresses of most of the Class members are known. *See Manual for Complex Litigation* at §30.2111. Notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 8:04 (4th ed. Updated June 2008) (citing *Manual for Complex Litigation* at § 30.211; *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a settlement class with nearly 18.5 million members).

Additionally, the content complied with the notice required for a contested class. Fed. R. Civ. Pr. 23 (c)(2)(B) (notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)."). Here, the content of the class notice stated all those things. (Doc. 129-1 at 35).

In conclusion, the Notice meets the legal standards for appropriate notice and satisfies Rule 23. *Id.* Therefore, the Court should find that the Notice complied with the Rules and Due Process.

## V.    <u>The agreed attorneys' fees are appropriate.</u>

Guitar Center has agreed to pay fees and costs to Class Counsel. Class Counsel undertook the case on a contingency basis and recovered a pool of money to

11

pay the class. In the Settlement Agreement, Defendants agreed to pay Class Counsel fees and expenses totaling one-third of the Settlement Fund. The settlement notice notified the Class members about the parties' agreement on attorneys' fees, and no Class member has complained or objected. Likewise, the CAFA notice informed the government entities about the fees and expenses and none objected.

Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of $20 million), citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995) ("[O]ne who 'creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.'").

The market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of

12

the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir.

1992). Where lawyers working on a contingency basis in the relevant community

typically charge one-third of any recovery to a private client, this shows that a

similar fee is appropriate in a contingency class action. *Id.*

Here, Class Counsel's request of one-third of the settlement fund is within

the market rate for this type of case. *See, e.g., Gonzalez et al. v. Plastival, Inc. et

al.*, No. 05-04864 (N.D. Ill. Sept. 23, 2008) (awarding 33% of the settlement fund to

attorneys' fees in a class action overtime wages case, plus costs) (Exhibit F); *Perry v.

National City Bank et al.*, No. 05-00891 (S.D. Ill. March 3, 2008) (awarding 33% of

the settlement fund to attorneys' fees in a FLSA overtime wages case) (Exhibit G);

*Arrez v. Kelly Services, Inc.*, No. 07-01289 (N.D. Ill. Oct. 09, 2009) (awarding 30% of

$11 million common fund to attorneys' fees in a IWPCA class action for vacation

pay, plus costs) (Exhibit H); *See also* Alba Conte & Herbert B. Newberg, NEWBERG

ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008); *Gaskill v. Gordon*, 942 F.

Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.) (38% fee), *aff'd,* 160 F.3d 361 (7th

Cir. 1998); *Goldsmith v. Technology Solutions, Co.*, 1995 U.S. Dist. LEXIS 15093

(N.D. Ill. Oct. 10, 1995) (Guzman, J.) (33.3% fee).

The Court should approve Guitar Center's agreement to pay Class Counsel's

fees and expenses.

## VI.    The incentive awards and payments to Plaintiffs are appropriate.

Additionally, the Court should approve Guitar Center's agreement to pay

$12,500 to Michael Kuhl and $4,500 each to Eric Disrud and Kevin Cherello. These

payments are not only in recognition of their roles and participation as Named

Plaintiffs, but also for their complete release of all individual claims they may have

against Defendants. Courts routinely award such "incentive payments" to the

persons who assume the special litigation burden of class representative and

thereby benefit the entire class. *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.

1998) (affirming $25,000 incentive award to class representative because "a named

plaintiff is an essential ingredient of any class action, [and] an incentive award is

appropriate if it is necessary to induce an individual to participate in the suit"); *In*

*re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D.

Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five

representatives).

Class action suits conserve judicial and litigant resources. *GMAC Mtge.*

*Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497, *citing* C. Krislov, SCRUTINY OF THE

BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286

(June 1990). Class representatives assume the burdens of litigation that absent

class members do not shoulder and do so without promise of a reward and with the

risk that the litigation may not succeed. The class representatives in this case were

no exception. But for Plaintiffs' initiative and participation, the benefits available

to all Class members would not have been realized. In addition, the individual

releases of claims being effected by Plaintiffs are significant, in that they are

releasing additional claims related to their employment with Defendants, which

claims are not being released by the Class members as a whole. The Court should

approve Plaintiffs' incentive payments.

## VII.    Conclusion.

WHEREFORE, Plaintiffs Michael Kuhl, Eric Disrud and Kevin Cherello

respectfully request that the Court enter the parties' agreed final approval order,

which was attached as Exhibit 1 to the Settlement Agreement and submitted

herewith as Exhibit A.

Dated: October 28, 2010                         Respectfully submitted,

                                                /s/  Louis C. Ludwig
                                                One of Plaintiffs' attorneys

Phillip A. Bock                                 Robin B. Potter
Richard J. Doherty                              Jennifer Purcell
James M. Smith                                  ROBIN POTTER & ASSOCIATES, P.C.
Louis C. Ludwig                                 111 East Wacker Drive, Suite 2600
BOCK & HATCH, LLC.                              Chicago, IL 60601
134 N. La Salle Street, Suite 1000              (312) 861-1800
Chicago, IL 60602
Phone: (312) 658-5500

Ilan Chorowsky
Lindsey Goldberg
PROGRESSIVE LAW GROUP LLC
505 N. LaSalle, Suite 350
Chicago, IL 60654
 (312) 787-2717